IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| ANTHONY D. KING,<br>*pro se* Plaintiff, | )<br>)<br>) |
| v. | ) Civil No. 3:16cv713 (DJN) |
| NANCY A. BERRYHILL,[1]<br>Acting Commissioner of Social Security,<br>Defendant. | )<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

On October 31, 2012, Anthony D. King ("Plaintiff") applied for Social Security Disability Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"), alleging disability from shoulder pain and diabetes mellitus, with an alleged onset date of December 31, 2008. The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration. Thereafter, an Administrative Law Judge ("ALJ") denied Plaintiff's claims in a written decision and the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred in denying Plaintiff his right to cross-examination and that the Appeals Council erred in not considering his new condition. (Mem. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.") (ECF No. 20) at 3-4; Compl. (ECF No. 3) at 1-2.) This matter now comes before the Court by consent of the parties, pursuant to 28 U.S.C. § 636(c)(1), on the

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. Pursuant to Federal Rules of Civil Procedure 25(d), Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this matter.

parties' cross-motions for summary judgment, rendering the matter ripe for review.[2] For the reasons that follow, the Court DENIES Plaintiff's Motion for Summary Judgment (ECF No. 18), GRANTS Defendant's Motion for Summary Judgment (ECF No. 27) and AFFIRMS the final decision of the Commissioner.

## I. PROCEDURAL HISTORY

On October 31, 2012, Plaintiff filed an application for DIB and SSI with an alleged onset date of December 31, 2008. (R. at 199-216.) The SSA denied these claims initially on February 27, 2013, and again upon reconsideration on August 22, 2013. (R. at 66-83, 86-105.) At Plaintiff's written request, the ALJ held a hearing on November 12, 2014. (R. at 24, 133-34.) On February 2, 2015, the ALJ issued a written opinion, denying Plaintiff's claims and concluding that Plaintiff did not qualify as disabled under the Act, because he could perform jobs that exist in significant numbers in the national economy. (R. at 10-19.) On June 29, 2016, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner subject to review by this Court. (R. at 1-3.) At Plaintiff's request, the Court heard oral argument on the parties' cross motions for summary judgment on February 1, 2017. (Tr. of Oral Arg. ("Tr.") (ECF No. 31).)

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the Social Security Administration's disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v.*

---

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

*Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The Social Security Administration regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. 20 C.F.R. § 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. 20

C.F.R. § 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity ("RFC"), accounting for the most that the claimant can do despite her physical and mental limitations. 20 C.F.R. § 416.945(a). At step four, the ALJ assesses whether the claimant can perform her past work given her RFC. 20 C.F.R. § 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. 20 C.F.R. § 416.920(a)(4)(v).

### III. THE ALJ'S DECISION

On November 12, 2014, the ALJ held a hearing during which Plaintiff (then-represented by counsel) and a vocational expert ("VE") testified. (R. at 24-65.) On February 2, 2015, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 10-19.)

The ALJ followed the five-step evaluation process established by the Social Security Act in analyzing Plaintiff's disability claim. (R. at 11-19). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (R. at 12.) At step two, the ALJ found that Plaintiff had the following severe impairments: (1) bony spurring along the under surface of the distal clavicle of both shoulders and (2) diabetes mellitus. (R. at 13.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 13-14.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform light work with additional limitations. (R. at 14-17.) Specifically, Plaintiff could never reach overhead on his right side, but he could occasionally reach overhead on his left side. (R. at 14.) Plaintiff could not climb ladders or scaffolds; tolerate workplace hazards including moving machinery,

4

unprotected heights or exposure to excessive heat; or, perform work that required driving. (R. at 14.) He could only occasionally crawl or balance. (R. at 14.) At step four, the ALJ found that Plaintiff could not perform his past relevant work as a laborer. (R. at 17-18.) At step five, the ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy. (R. at 18-19.) Therefore, Plaintiff did not qualify as disabled under the Act.

IV. ANALYSIS

Plaintiff, fifty-six years old at the time of this Opinion, previously worked as a laborer. (R. at 200, 255.) He applied for Social Security Benefits, alleging disability from diabetes and broken shoulders with an alleged onset date of December 31, 2008. (R. at 248.) Plaintiff's appeal to this Court alleges that the ALJ erred in denying Plaintiff his right to cross-examination and that the Appeals Council erred in not considering his new conditions. (Pl.'s Mem. at 3-4; Compl. at 1-2.) For the reasons set forth below, the ALJ did not err in her decision.

A. Substantial Evidence Supports the ALJ's Assignment of Substantial Weight to the Medical Opinion of the Consultative Examiner.

Plaintiff argues that the ALJ erred by denying Plaintiff his "right[] to cross-examination and rebuttal." (Pl.'s Mem. at 3.) At oral argument, Plaintiff clarified his position, stating that the ALJ denied him the opportunity to question consultative examiner, Nancy Powell, M.D. (Tr. at 3-5; R. at 351-54.) Plaintiff alleged that in her assessment, Dr. Powell did not adequately account for Plaintiff's shoulder pain or the dizziness brought on by his diabetes. (Tr. at 8-16.) Defendant responds that Plaintiff, represented by counsel during the hearing before the ALJ, had the opportunity to testify and question the VE who testified. (Def.'s Mot. for Summ. J. and in Opp'n to Pl.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") (ECF No. 28) at 10.) Additionally, Defendant argues that Plaintiff did not request a subpoena for any additional witnesses at the ALJ hearing, nor did he object to the record before the ALJ. (Def.'s Mem. at

10-11.) Given Plaintiff's explanation during oral argument, the Court characterizes Plaintiff's first argument as challenging the weight that the ALJ afforded to Dr. Powell's opinion.

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments, that would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's provided medical records and any medical evidence resulting from consultative examinations or medical expert evaluations. 20 C.F.R. §§ 404.1512(a)-(e), 404.1527. When the record contains a number of different but consistent medical opinions, including those from Plaintiff's treating sources, consultative examiners or other sources, the ALJ makes a determination based on that evidence. § 404.1520b(a). If, however, the record contains medical opinions inconsistent with each other or other evidence, the ALJ must evaluate the opinions and assign respective weight to properly analyze the evidence involved. § 404.1527(c)(2)-(6), (e).

Courts generally should not disturb an ALJ's decision as to the weight afforded a medical opinion absent some indication that the ALJ "dredged up 'specious inconsistences.'" *Dunn v. Colvin*, 607 F. App'x 264, 267 (4th Cir. 2015) (citing *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)). Indeed, an ALJ's decision regarding the weight afforded a medical opinion should remain untouched unless the ALJ failed to give a sufficient reason for his assessment. § 404.1527(d).

Here, on February 19, 2013, Dr. Powell performed a consultative examination of Plaintiff for the Virginia Department of Rehabilitative Services. (R. at 351-54.) Dr. Powell recorded shoulder pain as Plaintiff's chief complaint, noting that he experienced more pain in his left shoulder than his right. (R. at 351.) Plaintiff had received a cortisone shot in his left shoulder,

but he reported no current medications for his shoulder pain or otherwise. (R. at 351-52.) Though he did not drive, Plaintiff told Dr. Powell that he cooked, and he enjoyed walking, playing chess and watching sports on television. (R. at 352.) Dr. Powell noted Plaintiff's diabetes, but otherwise made largely unremarkable findings. (R. at 352-54.) Plaintiff could walk, sit, stand, lie down, bend as well as take his shoes off and put them back on without difficulty. (R. at 352.) With the exception of limited external rotation of the shoulders, Dr. Powell's physical examination of Plaintiff revealed normal findings. (R. at 352-53.) He exhibited normal gait, regular heart rate and rhythm, as well as normal range of motion of the cervical spine, elbows, wrists, hands, hips, knees and ankles. (R. at 353.) Dr. Powell opined that Plaintiff could lift or carry thirty pounds occasionally and twenty pounds frequently. (R. at 353-54.) Dr. Powell noted that Plaintiff's shoulder pain could cause possible limitations with climbing and reaching, but she found no environmental limitations. (R. at 354.)

The ALJ gave substantial weight to Dr. Powell's assessment of Plaintiff to the extent that it comported with Plaintiff's ability to perform light work and limited him from certain reaching and climbing due to his shoulder pain. (R. at 17.) However, the ALJ did not afford "great weight" to this opinion, because Dr. Powell examined Plaintiff only once and did not have the opportunity to review Plaintiff's additional medical records, which illustrated the dizziness and nausea that accompanied Plaintiff's diabetes. (R. at 17.) Substantial evidence in the record supports the assignment of substantial weight to Dr. Powell's opinion.

First, the ALJ did not fully credit the consultative opinion of Dr. Powell. Indeed, the limitations that the ALJ placed on Dr. Powell's opinion mirror the points that Plaintiff made during oral argument. First, Plaintiff argued that Dr. Powell insufficiently assessed his shoulder pain. (Tr. at 8-10.) While Dr. Powell found that Plaintiff could lift or carry thirty pounds

7

occasionally and twenty pounds frequently, the ALJ restricted Plaintiff further. (R. at 14-17, 353-54.) In formulating the RFC, the ALJ limited Plaintiff to light work. (R. at 14.) Light work involves lifting *no more than* twenty pounds and frequently lifting or carrying *up to* ten pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b). Moreover, where Dr. Powell opined of "possible" reaching limitations, the ALJ entirely precluded Plaintiff from overhead reaching on his right side, and restricted him to no more than occasional overhead reaching on his left side. (R. at 14, 354.) These restrictions comport with Plaintiff's own testimony before the ALJ that reaching overhead with his right arm caused him the most difficulty. (R. at 48.)

Second, Plaintiff challenged Dr. Powell's opinion for failing to address his dizziness. (Tr. at 10-13.) The ALJ specifically did not afford more weight to Dr. Powell's assessment, because she did not have the benefit of reviewing Plaintiff's medical records that demonstrated the dizziness that he experienced from his diabetes medication. (R. at 17.) In explaining the RFC, the ALJ noted that Plaintiff must avoid excessive heat, because exposure to such conditions would exacerbate his dizziness. (R. at 14, 16.)

Third, Plaintiff argued that Dr. Powell failed to properly assess his diabetes. (Tr. at 9, 13-14.) However, Dr. Powell did note that Plaintiff had non-insulin-dependent diabetes mellitus. (R. at 352.) Further, the ALJ considered Plaintiff's diabetes a severe impairment, thoroughly reviewed his diabetes treatment history, and accounted for Plaintiff's dizziness (a side effect of his diabetes treatment) in the RFC. (R. at 13-17.)

Objective medical evidence in the record further supports the ALJ's assignment of substantial weight to Dr. Powell's assessment. The record largely reflects Plaintiff's ongoing treatment for diabetes. (R. at 305-400.) On December 20, 2010, Plaintiff saw Kevin Powers, M.D., at Glenside Medical Associates ("Glenside Medical") for diabetes management. (R. at

318.) Plaintiff had not seen a physician at Glenside Medical since 2007. (R. at 318.) Dr. Powers planned to get Plaintiff back on a treatment regimen after Plaintiff had stopped taking his medications a month earlier when he ran out. (R. at 318.) On January 24, 2011, Plaintiff reported that he did not check his blood sugar at home. (R. at 313.) Dr. Powers prescribed Plaintiff Amaryl in addition to his regular Metformin dosage. (R. at 313.)

On April 6, 2011, Plaintiff returned to Glenside Medical and presented to Glenn B. Mizrach, M.D., to follow up on his blood sugar levels. (R. at 310.) Plaintiff had stopped taking his diabetes medications a week earlier. (R. at 310.) He told Dr. Mizrach that he felt good, and he had no other complaints beyond wanting his sugar levels checked. (R. at 310.) Dr. Mizrach noted normal findings across Plaintiff's blood pressure, heart, extremities, neck and chest. (R. at 310.) However, Dr. Mizrach found Plaintiff's diabetes "not under optimal control," and he advised Plaintiff to take his medication as prescribed, follow a healthy diet and exercise if he wanted to avoid becoming insulin dependent. (R. at 310.)

In March 2012, the emergency department of the McGuire VA Medical Center (the "VAMC") treated Plaintiff for diarrhea. (R. at 337-38.) He had stopped taking his diabetes medications six months earlier, and the attending physician noted that Plaintiff improved after receiving insulin and intravenous fluids. (R. at 338, 340.) Plaintiff insisted that the VAMC discharge him. (R. at 338.) On May 29, 2012, Plaintiff returned to the VAMC seeking diabetes treatment. (R. at 322, 330-33.) Like Dr. Powers and Dr. Mizrach, Benjamin Kweku Ellis, P.A., noted Plaintiff's history of noncompliance with his diabetes medications. (R. at 330, 332.) Plaintiff wanted refills of his medications, but he "emphatically refuse[d]" insulin treatment due to his aversion to needles. (R. at 330.) Plaintiff complained of a toothache, but he denied chest pain, nausea, blurred vision, weight loss or loss of bowel or bladder functions. (R. at 330.) Mr.

Ellis adjusted Plaintiff's medications, instructed him to use test strips daily to check his blood sugar, and told him to follow up in two months. (R. at 331-32.)

Plaintiff's additional treatment records from the VAMC further indicate his noncompliance and his refusal to take insulin despite the repeated recommendations of his healthcare providers. (R. at 370-400.) On July 25, 2013, August 8, 2013, December 12, 2013, and October 9, 2014, Plaintiff rejected the recommendations of staff at the VAMC that he use insulin, often refusing to even discuss the treatment option. (R. at 370-71, 382, 384-86, 388.) During most of these visits, Plaintiff continued to report noncompliance with his medications and checking his blood sugar notwithstanding his doctors' emphasis on the importance of complying. (R. at 370-71, 375, 381-82, 384-86, 388, 394.) Notably, when Plaintiff took his medications as directed, his symptoms improved. For example, on August 8, 2013, Plaintiff had taken his medications and presented without complaint. (R. at 383.) These records develop Plaintiff's history of noncompliance, indicate that Plaintiff's diabetic symptoms improved when treated and show his continued disregard for a recommended, viable treatment option.

Further, the treatment records lack almost any evidence of complaints of dizziness. On July 25, 2013, Plaintiff refused to take 1,000 mg of Metformin, because it made him feel dizzy. (R. at 385.) However, he indicated that when he took 500 mg of Metformin twice per day, the dizziness subsided. (R. at 385.) Aside from that one complaint, Plaintiff's medical record does not reference dizziness, despite nearly four years' worth of diabetes management. (R. at 310-400.) Nevertheless, the ALJ credited Plaintiff's testimony and subjective complaints concerning dizziness and incorporated this diabetic symptom into the RFC.

In his adult function report, Plaintiff stated that his dizziness prevented him from completing tasks and became more prohibitive in hot weather while on his diabetes medications.

(R. at 269, 273, 275.) Still, Plaintiff reported walking daily and estimated that he could walk about one mile before needing to stop and rest. (R. at 271-73.) At the hearing before the ALJ, Plaintiff testified that his dizziness prevented him from working and worsened in the heat. (R. at 38-40.) He attributed feeling dizzy to taking his medications, and he admitted that — despite his doctors' instructions to the contrary — he would stop taking them so that he would feel better. (R. at 39-40.) Plaintiff felt dizzy three or four times per week, usually in the morning, but lying down for fifteen minutes improved his condition. (R. at 40-41.) The ALJ took Plaintiff's dizziness into consideration despite the fact that Dr. Powell's opinion did not address the symptom. (R. at 14-17.)

The ALJ also accounted for Plaintiff's shoulder pain. In a pain questionnaire, Plaintiff stated that his right shoulder caused him more pain than his left. (R. at 265.) He experienced the most pain when reaching overhead. (R. at 265-66.) Likewise, Plaintiff testified before the ALJ about his shoulder pain, again noting worse pain in his right shoulder. (R. at 42-44.) He had received several shots, but the pain persisted. (R. at 43.) At the time of the hearing, Plaintiff took no medication to moderate his shoulder pain. (R. at 46.) On February 21, 2013, Plaintiff underwent consultative x-rays of both of his shoulders. (R. at 362-64.) The consultative examiner found bony spurs along the undersurface of the distal clavicles of both shoulders. (R. at 362-63.) However, the examination revealed no acute fractures or dislocation. (R. at 362-63.) Dr. Powell did not have the benefits of these reports, because the consultative examination occurred after Dr. Powell had examined Plaintiff. (R. at 351-54, 362-63.) The ALJ, however, did review the consultative examiner's reports and incorporated more restrictive weight-bearing and overhead reaching limitations into Plaintiff's RFC than Dr. Powell had opined. (R. at 14-17.)

Finally, though Dr. Powell did not discuss Plaintiff's diabetes, the ALJ found that it qualified as a severe impairment and accounted for the condition in the RFC. (R. at 14, 16-17.) As detailed above, Plaintiff has a well-documented history of noncompliance, including refusing insulin and making unilateral decisions to cease taking his diabetes medications as prescribed. (R. at 310, 313, 318, 330, 332, 338, 340, 370-71, 375, 381-82, 384-86, 388, 394.)

Noncompliance with a treatment regimen can indicate a claimant's lack of credibility as to the severity of his alleged symptoms. *Dunn*, 607 F. App'x at 275-76. Once an ALJ has found a claimant non-compliant with treatment, the ALJ may deem the claimant's statements about his pain or symptoms "less credible." SSR 96-7p, 1996 WL 374186, at *7.[3] But first, the ALJ must consider any explanations revealed by the claimant, or evident in the record, that could explain the failure to comply before drawing any reasonable inferences therefrom.

Here, the ALJ found that Plaintiff's impairments could cause his alleged symptoms, but she found Plaintiff's statements regarding the severity of his symptoms "not entirely credible." (R. at 15.) Though Plaintiff often gave no reason for not taking his medications, on occasion he indicated that he felt better without them and had a goal of not relying on medicine to manage his diabetes. (R. at 39-40, 310, 313, 318, 330, 338, 340, 371, 375, 381-82, 384-86, 388, 394.) The ALJ cited Plaintiff's noncompliance as one of several reasons — including the routine nature of his medical care and the occasional odd jobs that Plaintiff worked after his alleged onset date — for diminishing his credibility. (R. at 16.) Nonetheless, the ALJ accounted for Plaintiff's

---

[3] On March 16, 2016, the SSA issued SSR 16-3p, which rescinded and superseded SSR 96-7p, eliminating any credibility finding at issue here. The ALJ issued his opinion on February 2, 2015, before SSR 16-3p took effect on March 28, 2016. The Agency does not have the power to engage in retroactive rulemaking. *Compare Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) (requiring Congress to expressly convey the power to promulgate retroactive rules due to its disfavored place in the law), *with* 42 U.S.C. § 405(a) (granting the Agency the general power to make rules, but not granting the Agency retroactive rulemaking power). Because the SSR does not have retroactive effect, SSR 96-7 applies to this case.

diabetes, particularly the dizziness that he experienced from medication, by precluding him from working around unprotected heights or in excessive heat. (R. at 14.) Thus, the ALJ properly evaluated Plaintiff's credibility and considered his diabetes, and her decision finds support in the record.

The evidence detailed above supports the ALJ's assignment of weight to Dr. Powell's opinion. Plaintiff's own testimony and statements regarding his shoulder pain comport with the climbing and reaching limitations to which Dr. Powell opined. Moreover, the ALJ did not rely on Dr. Powell's assessment to evaluate the effects of Plaintiff's diabetes or related dizziness on his capacity to work. Instead, the ALJ relied on Plaintiff's longitudinal medical history that revealed routine treatment and continued noncompliance. The ALJ also considered Plaintiff's subjective complaints of dizziness in formulating the RFC and in discounting Dr. Powell's opinion. Consequently, substantial evidence in the record supports the ALJ's decision to afford substantial weight to Dr. Powell's opinion.

### B. The Appeals Council Did Not Err in Denying Plaintiff's Request for Review.

Plaintiff also argues that the Appeals Council erred in denying his request for review based on new information that he submitted. (Pl.'s Mem. at 3; Compl. at 2.) Specifically, Plaintiff alleges that he suffered a heart attack and underwent open heart surgery; therefore, the Appeals Council should have granted his request. (Compl. at 2.) Defendant responds that Plaintiff's heart condition does not relate back to the relevant period before the ALJ. (Def.'s Mem. at 13.) Thus, Defendant argues that the Appeals Council had no obligation to consider Plaintiff's new condition, let alone to develop the record regarding that condition. (Def.'s Mem. at 12-15.)

In determining whether substantial evidence supports the ALJ's decision, a district court cannot consider evidence that was not presented to the ALJ. *Smith v. Chater*, 99 F.3d 635, 638 n.5 (4th Cir. 1996) (citing *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 714–15 (1963)); *Huckabee v. Richardson*, 468 F.2d 1380, 1381 (4th Cir. 1972) (citing *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1970)) (noting that reviewing courts are restricted to the administrative record in determining whether substantial evidence supports the decision). However, when a claimant submits evidence not already in the record to the Appeals Council, the Appeals Council must consider that evidence if it is new, material and relates "to the period on before the date of the ALJ decision." 20 C.F.R. §§ 404.970(b), 416.1470(b) (2015)[4]; *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 95-96 (4th Cir. 1991) (quoting *Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir. 1990)). The claimant must submit the evidence that he wants the Appeals Council to consider with his request for review. 20 C.F.R. §§ 404.968(a), 416.1468(a).

On June 2, 2016, Plaintiff submitted a letter to the Appeals Council requesting review of the ALJ's decision. (R. at 301.) In the letter, Plaintiff stated that he had suffered a heart attack on March 17, 2016, and underwent open heart surgery the following the month. (R. at 301.) Plaintiff did not include any additional documents or other evidence in support of his new condition. Even if he had submitted supporting documents, however, Plaintiff's argument would fail. His heart attack and subsequent surgery occurred more than one year after the ALJ's decision. (R. at 19, 301.) Plaintiff's new evidence, therefore, does not relate back to the relevant

---

[4] Effective January 17, 2017, the Agency amended 20 C.F.R. §§ 404.970(b) and 404.1470(b) to also require, *inter alia*, that a claimant show good cause for not submitting the additional evidence to the ALJ pursuant to 20 C.F.R. §§ 404.935 and 416.1435, respectively. The ALJ issued her decision on February 2, 2015, and the Appeals Council denied Plaintiff's request for review on June 29, 2016. As previously stated, the Agency does not have the power to engage in retroactive rulemaking. Consequently, the Court will review the Appeals Council's decision under the version of the regulation in effect at the time that it rendered its decision.

period. 20 C.F.R. §§ 404.970(b), 416.1470(b). Consequently, the Appeals Council did not err in denying Plaintiff's request for review.

Instead, if Plaintiff believes that his heart attack and surgery in 2016 warrant a finding of disability, then he should file a new application for benefits. 20 C.F.R. §§ 404.620(a)(2), 416.330(b). In fact, the Court informed Plaintiff of this remedy during oral argument when he claimed that the Appeals Council should have addressed his heart attack. (Tr. at 15.) Because this additional evidence occurred after the ALJ rendered her decision, Plaintiff's heart attack and open heart surgery do not warrant remand.

## V. CONCLUSION

For the reasons set forth above, the Court hereby DENIES Plaintiff's Motion for Summary Judgment (ECF No. 18), GRANTS Defendant's Motion for Summary Judgment (ECF No. 27) and AFFIRMS the final decision of the Commissioner.

An appropriate Order consistent with this Memorandum Opinion shall be issued.

The Clerk is directed to send a copy of this Memorandum Opinion to *pro se* Plaintiff at his address of record and to all counsel of record.

It is so ORDERED.

/s/
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: September 19, 2017